# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DIANA BOOTH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-00179-NKL ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

# ORDER

Plaintiff Diana Booth appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the decision is affirmed.

**I. Background**

This appeal pertains to the Social Security Administration's finding that Diana Booth was not disabled between November 29, 2011 and December 23, 2013. Booth's first application for disability benefits, filed in February 2012, claimed an onset date of November 29, 2011. Tr. 170. She alleged disability due to the following impairments: herniated and bulging discs due to a back injury, injury to her left arm or shoulder, chronic fatigue syndrome and attention deficit disorder due to her chronic fatigue syndrome, generalized anxiety disorder, depression, panic attacks, fibromyalgia, chronic pain and chronic insomnia. Tr. 198. The ALJ issued an unfavorable decision on December 23, 2013, which Booth appealed. Tr. 14–33. The Court reversed and remanded the ALJ's decision Tr. 692–709; *see Booth v. Colvin*, No. 15-410-NKL, 2016 WL 632621 (W.D. Mo. Feb. 17, 2016). While her appeal was pending before this Court, Booth filed

a new claim for benefits, relating to a later period, and a different ALJ found that Booth had a disability as of December 24, 2013. Tr. 759–73.

When reversing the original ALJ's decision, the Court directed the ALJ to reevaluate the opinion evidence of Dr. Box, the treating physician, and if the ALJ still decided not to afford Dr. Box's opinion controlling or substantial weight, the ALJ had explain why. Tr. 707. The Court also found that the ALJ erred by failing to consider Booth's chronic fatigue. Tr. 708.

On remand, the ALJ concluded that during the closed period—between November 2011 and December 23, 2013—Booth had multiple severe impairments, including fibromyalgia, degenerative disc disease, impingement of the left shoulder, and major depressive disorder, but that Booth did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 624–26. The ALJ found that Booth

> had the residual functional capacity to perform sedentary work . . . . [Booth] could sit for 6 hours out of 8 hours; and she could stand and walk in combination for 2 hours out of 8 hours. [Booth] had to have the ability to shift positions hourly without leaving her duty station. She could lift, carry, push, or pull negligible weights, such as files or documents, weighing up to 5 pounds frequently and up to an including 10 pounds occasionally. However, [Booth] could never lift, carry, push, pull, or reach above shoulder level with her left upper extremity. She could never climb ladders, ropes, or scaffolding. [Booth] could occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl.
>
> [Booth] had to have an indoor work environment. She could never be exposed to extreme cold, extreme hear; wetness; humidity; or noxious fumes, odors, dust, or airborne particulate. She could never be exposed to vibration or to hazards, such as dangerous machinery and unprotected heights.
>
> Mentally, [Booth] required duties that were simple, repetitive, and routine in nature. She could never be expected to exercise independent judgment regarding the nature of her job duties. These duties had to be consistently the same with little or no change. Additionally, the duties had to be low stress in nature, defined as never having duties that require piecework or commission sales. [Booth] could never travel except to and from one primary job site.

Tr. 627. Based on testimony from a vocational expert, the ALJ concluded that Booth could perform jobs existing in significant numbers in the national and Missouri economy, including work as a food/beverage order clerk, document preparer, and semi-conductor bonder, and therefore is not disabled. Tr. 633.

## II. Legal Standard

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id*. "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. Discussion

Booth challenges the sufficiency of the ALJ's RFC determination based on the ALJ's failure to properly consider the opinion of Booth's treating rheumatologist, Dr. Box. Dr. Box's Physical Capacities Evaluation advised that although Booth could use her hands and feet, she should be limited to 30 minutes for repetitive foot controls and pushing or pulling more than minimal weight. Tr. 71. Dr. Box thought that Booth could never lift or carry over 20 pounds, and could never stoop, kneel, crouch or crawl, but could occasionally climb, balance and reach above her shoulders. Tr. 572. According to Dr. Box, Booth also needed opportunities to alternate sitting and standing, and that she could sit for no more than four hours and stand or walk for no more than

one hour in an eight-hour day. Tr. 571. Dr. Box also advised that the severity of Booth's fatigue and pain precluded even unskilled, work-related tasks. Tr. 572–76.

The ALJ afforded "partial weight" to Dr. Box's opinion. In accordance with Dr. Box's opinion, the ALJ concluded that fibromyalgia was among Booth's severe impairments. Tr. 624. She also stated that Booth needed to be able to shift positions hourly. Tr. 627. The ALJ partially incorporated Dr. Box's opinion regarding Booth's fatigue, finding that Booth could perform only sedentary work with additional restrictions on physical exertion. *Id.* But the ALJ found that other parts of Dr. Box's opinion—that Booth was disabled and could not work a total of eight hours, and that her pain and fatigue were so severe that they precluded full-time work—to be "generally inconsistent with the record . . . inconsistent with the opinions of the medical expert at the hearing, as well as the substantive evidence of the record, [and] simply not well supported by medically acceptable clinical and laboratory diagnostic techniques." Tr. 630–31. The ALJ also stated that to the extent that Dr. Box's opinion touched issues reserved to the Commissioner, Dr. Box's opinion was not entitled to controlling weight. Tr. 631.

A Residual functional capacity (RFC) is the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). It must be supported by substantial evidence, and include at least some medical evidence. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perkins v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012)) (citation omitted); *accord* 20 C.F.R. § 416.927(d). "[T]he claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

With respect to the weight given medical source opinions, an ALJ must give controlling weight to a treating medical source's opinion regarding the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015). However, a treating source's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Nowling v. Colvin*, 813 F.3d 1110, 1122–23 (8th Cir. 2016) (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). A treating medical source opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Papesh*, 786 F.3d at 1132. For example, "a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (citations omitted). Regardless of the ALJ's conclusion, the ALJ must "always give good reasons for the weight afforded to a treating physician's evaluation." *Nowling*, 813 F.3d at 1123 (citation omitted).

The Physical Capacities Evaluation submitted by Dr. Box for this closed period was one of the "checkbox" variety. Beyond modifying his affirmative checks regarding Booth's ability to push and pull or use her feet for repetitive movements with 30 minute time limits, Tr. 571, and filling in his diagnoses, the only explanation Dr. Box provided was that Booth "[h]as fibromyalgia. This condition is characterized by hypersensitivity and pain from simple activities and stimulus." Tr. 573. In answering whether her pain or fatigue "is disabling to the extent that it prevents the patient from working full time, even in a sedentary position," Dr. Box checked "yes." Tr. 572–75. Given the conclusory nature of the opinion and the lack of detail, the ALJ looked for support in the medical records. *See Anderson*, 696 F.3d at 793–94 (finding ALJ properly examined treatment notes when opinion was conclusory checkbox form).

5

Dr. Box's notes reflect that he consistently recommended exercise in response to Booth's complaints of pain and fatigue through 2012 and 2013. Tr. 509 ("I encouraged her to try to increase her level of exercise [in March 2012]."); Tr. 550 ("I have encouraged her to try to keep up with regular exercise [in October 2012]"); Tr. 590 ("She does need to keep up with regular activity. . . . I have encouraged her to try to keep up with regular stretching and gentle exercise [in May 2013]."); Tr. 601 ("I have encouraged her to try to keep up with regular exercise and work on stress control [in July 2013]."). Other doctors made similar recommendations with respect to Booth's back pain. Tr. 424 ("Continue Home Exercise Program."); Tr. 405 ("My advice to her was to get more physically active"). The ALJ concluded that Booth's non-compliance with Dr. Box's treatment advice "weighs against her complaints." Tr. 628. "A claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (citation omitted).

The ALJ also found that the Workers' Compensation records did not support the severity of pain alleged.[1] Tr. 629. After a fall at work in February 2011, Booth was released to work, first with some restrictions, and then to regular duty a week later. Tr. 287, 290. Multiple examinations and MRIs during and following that injury showed only mild or minimal injury in her lower back and a full range of motion. Tr. 317, 368, 433, 437, 602–05, 625. A March 2012 functional capacity evaluation further revealed that Booth could lift over 60 pounds despite indications that she made an "invalid effort." Tr. 422.

---

[1] Recognizing that the standards differ from those used by the Social Security Administration, the ALJ afforded this evidence partial weight. Tr. 631.

6

Given that the "symptoms [of fibromyalgia] are entirely subjective," *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009), the ALJ continued to assess Booth's credibility regarding the intensity and persistence of her symptoms. In finding that Booth was more "physically and mentally capable than alleged," the ALJ highlighted that Booth had enrolled in online college courses in 2012 and that she applied and interviewed for jobs during the period under consideration. Tr. 630. Booth's "job search undermines [her] claim that [s]he was unable to work." *Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999). The fact that Booth also claimed unemployment benefits, beginning in November 2011 and continuing for about one year, corroborates the ALJ's suspicion that Booth even believed that she was not disabled for at least some of the closed period. Tr. 41. "In order to be eligible for unemployment benefits, [Booth] was required to sign documents stating that [she] was capable of working and seeking work[, a] statement . . . clearly inconsistent with [her] claim of disability during the same period. *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994); *accord Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (finding that collection of unemployment benefits undermines the credibility of claimant).

Finally, the ALJ also noted that some of the symptoms or complaints discussed at the hearing after the case was remanded were not originally claimed or present during the closed period. Specifically, the ALJ noted that Booth did not seek treatment for headaches and sore throats prior to 2014, and that her home health care did not start until May 2014. Tr. 628.

In sum, there was substantial evidence to support the ALJ's conclusion that Dr. Box's opinion was only entitled to partial weight. Although the record as a whole could have supported a different finding, the district court's role is to determine whether substantial evidence supports the ALJ's decision, not whether the district court itself would have come to the same conclusion.

*See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) ("We may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."). Having found that the ALJ both adequately explained her decision and arrived at a conclusion that is supported by the record, the Court must defer to the Commissioner and affirm the ALJ's decision.

## IV. Conclusion

For the reasons stated above, the ALJ's determination is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 17, 2019  
Jefferson City, Missouri